**COMMONWEALTH of Kentucky,
Appellant,**

v.

**Elizabeth BRANDENBURG, Appellee.**

**No. 2001–SC–0722–DG.**

Supreme Court of Kentucky.

Sept. 18, 2003.

A.B. Chandler, III, Attorney General, Ian G. Sonego, Assistant Attorney General, Susan Roncarti, Assistant Attorney General, Office of the Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellant.

Thomas Keith Hollon, Beattyville, Counsel for Appellee.

Opinion of the Court by Justice STUMBO.

Elizabeth Brandenburg was indicted for one count of trafficking in a controlled substance, one count of possession of drug paraphernalia, and one count of possession of marijuana in the Lee Circuit Court. She entered a conditional guilty plea to the charges after the trial court refused her motion to suppress the evidence recovered during the search of her home pursuant to a search warrant issued by the Lee District Court trial commissioner, Margie Shuler. Brandenburg argued at the suppression hearing that the trial commissioner was not a neutral and detached magistrate because the trial commissioner's husband was employed by the Lee County Commonwealth Attorney's office as the Victim Advocate. The trial court overruled Brandenburg's motion to suppress. The Court of Appeals reversed the trial court and held that the trial commissioner was not a neutral and detached magistrate as required by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and adopted by this

Court in *Crayton v. Commonwealth*, Ky., 846 S.W.2d 684 (1992), because "she, through her husband's employment, is receiving an indirect pecuniary benefit from the Commonwealth Attorney, who regularly submits warrant applications for probable cause determination." We granted discretionary review and hereby affirm the Court of Appeals' decision.

On February 2, 1999, Brandenburg's son contacted police and advised them that he believed there to be stolen property at his mother's home and that she had also been trafficking in prescription medication. The Lee County Commonwealth Attorney and a police officer prepared an affidavit detailing the information provided by Brandenburg's son and the officer took the affidavit to the home of trial commissioner, Margie Shuler, to obtain a search warrant for Brandenburg's home. The trial commissioner signed the warrant and it was executed the same day. The officers seized numerous items including: a large amount of the prescription medication Tylox, drug paraphernalia, and a small amount of marijuana. No stolen property was recovered.

■ The sole issue before us is whether a trial commissioner who is married to an employee of the Commonwealth Attorney's office, "manifest[s] that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure." *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920, 928 (1979). We hold that in the case *sub judice*, the trial commissioner, due simply to her marital status, was not the neutral and detached magistrate that the Fourth Amendment to the United States Constitution, Section 10 of the Kentucky Constitution, and the United States Supreme Court guarantee.

■ The Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution protect our citizens from unreasonable search and seizure. Inherent in this protection is the guarantee that the determination of probable cause to search is to be made by a neutral issuing authority rather than by the law enforcement officers responsible for its execution. *Leon*, 468 U.S. at 914, 104 S.Ct. 3405; *Rooker v. Commonwealth*, Ky., 508 S.W.2d 570, 571 (1974).

Judges and trial commissioners are also governed by a code of ethics. Section 121 of the Kentucky Constitution authorizes the Supreme Court to promulgate rules governing judicial conduct. Pursuant to that authority, this Court issued the Code of Judicial Conduct (Code) codified at Supreme Court Rule (SCR) 4.300. Canon 2 of the Code states, "A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities." Canon 3E(1) requires that a judge disqualify himself when his impartiality "might reasonably be questioned."

SCR 5.070 makes trial commissioners of the district court subject to the Supreme Court's rules governing the retirement and removal of judges. Also, SCR 5.050 governs the disqualification of trial commissioners and holds that "[a] trial commissioner shall disqualify himself in all matters in which he has an interest, relationship or bias that would disqualify a judge."

First, we note that this Court has not previously addressed whether a violation of the canons of the Code of Judicial Conduct, namely, a judge's failure to avoid the "appearance of impropriety," amounts to a finding that the judge is not a neutral and detached magistrate, thus requiring suppression of any evidence obtained pursuant to a search warrant issued by that judge.

The Court of Appeals has addressed such a situation in *Dixon v. Commonwealth*, Ky.App., 890 S.W.2d 629 (1994), wherein it held that a trial commissioner who was the law partner of the County Attorney was not a neutral and detached magistrate capable of making probable cause determinations for search warrants. *Id.* at 630. The court in *Dixon* found that the mere association with the County Attorney created an appearance of impropriety, in violation of Canon 2 of the Code, which destroyed the trial commissioner's character as a neutral and detached issuing authority. *Id.* at 631. We agree with the Court of Appeals' reasoning in *Dixon*, and hereby extend the holding of that case to apply to situations such as in the case at bar, where the trial commissioner is the spouse of an employee of the Commonwealth Attorney's office.[1]

Here, as in *Dixon*, the very nature of the circumstances suggests that the trial commissioner may "be partial to the requests of" her husband's employer, who as the Commonwealth Attorney, certainly participates in the prosecution of criminal cases. *Id.* A trial commissioner who is not a lawyer, such as in the case at bar, may also give further credence to a search warrant prepared by the Commonwealth Attorney, whom she feels may be better qualified to make probable cause determinations. It is important to note that there has not been an accusation of any real impropriety against the trial commissioner in this case. It is enough that the public might perceive that the trial commissioner is not impartial due to her husband's employment with the Commonwealth Attorney's office, thereby creating an appearance of impropriety. In such an instance, recusal is mandatory.

Several advisory opinions of the Judicial Ethics Committee have found an appearance of impropriety when addressing similar situations where a judge or trial commissioner (or an employee of) has a close relationship with either an attorney who practices before the judge, or an employee of that attorney's office. *See e.g.,* Judicial Ethics Opinion (JE)—13 (stating that a judge may not hire a part-time secretary who also works for a former law partner because it may appear to others that the former law partner may be able "to exert a subtle influence on the judge" by sharing a secretary); JE—47 (stating that a trial commissioner must disqualify from all matters in which his former law partner, who was also the County Attorney, appeared); JE—101 (stating that a judge whose secretary is married to an attorney appearing before the judge must recuse himself because of the appearance of impropriety). Other advisory opinions have stated that a judge could sign arrest warrants prepared by his daughter in her capacity as County Attorney if there was no other judge on hand to issue the warrant (JE—34); and that a judge must disqualify himself only in those cases in which his son, as an assistant Commonwealth Attorney, actually participates (JE—8).

However, this Court has spoken to this issue on only a few instances. In *O'Hara v. Kentucky Bar Association*, Ky., 535 S.W.2d 83 (1975), we affirmed an ethics opinion adopted by the Kentucky Bar Association that stated a trial commissioner could not be a member of the same law firm as the Commonwealth Attorney. In *Sanderson v. Ethics Committee of the Kentucky Judiciary*, Ky., 804 S.W.2d 10 (1991), we upheld the Committee's opinion

---

1. Our ruling does not, however, preclude the trial commissioner from signing warrants prepared by the County Attorney's office.

that found a violation of Canon 2 of the Code of Judicial Conduct when an assistant County Attorney also held the position of Domestic Relations Commissioner "because of the potential for public distrust . . . ."

Today's opinion takes a harsher stance against the propriety of judges and trial commissioners having close personal relationships with others who may be in a position to influence their decision-making. We reiterate that there need not be an actual claim of bias or impropriety levied, but the mere appearance that such an impropriety might exist is enough to implicate due process concerns.

Appellant refers us to a Seventh Circuit case that interpreted numerous United States Supreme Court opinions dealing with judicial recusal as standing for the proposition that the mere appearance of injustice is not enough to implicate the Due Process Clause. *See Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363 (7th Cir.1994). We, however, are not inclined to agree with this reasoning. In fact, the Supreme Court has several times stated to the contrary:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter

due process of law.' *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11.

*American Cyanamid Co. v. Federal Trade Comm'n*, 363 F.2d 757, 763–764 (6th Cir. 1966) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955)).

Appellant suggests that most United States Supreme Court cases dealing with judicial disqualification found due process violations only when judges were faced with "direct, personal, substantial, pecuniary interests." *See, e.g., Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (judge was paid only if defendant was convicted); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (judge had filed similar suit against insurer and effect of decision enhanced the settlement value of judge's own case).

While it is true that those particular cases involved pecuniary benefits, the Supreme Court has never held that this is the only basis for judicial disqualification of a constitutional dimension. There is, in fact, a second line of Supreme Court cases that hold "acting as an adjunct law enforcement officer" also destroys the neutrality of a judicial officer charged with making probable cause determinations. *Lo–Ji Sales*, 442 U.S. at 326–327, 99 S.Ct. 2319. The Supreme Court "long has insisted that inferences of probable cause be drawn by 'a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enter-

prise of ferreting out crime.'" *Shadwick v. City of Tampa,* 407 U.S. 345, 350, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783, 788 (1972) (quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948)).

This line of cases have found due process violations solely because the judicial officer responsible for issuing the search warrant was linked too closely with law enforcement officials in charge of investigating and prosecuting the crime. *See Lo–Ji Sales, supra* (the Town Justice who made probable cause determinations became member of law enforcement's search party); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (Attorney General who issued search warrant was in charge of investigation and later became prosecutor at defendant's trial).

In *Connally v. Georgia,* 429 U.S. 245, 250, 97 S.Ct. 546, 548, 50 L.Ed.2d 444, 448 (1977), the Court reiterated that the proper test was whether the situation was one which offers "'a possible temptation to the average man as a judge ... or which might lead him not to hold the balance nice, clear and true between the State and the accused....'" (quoting *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972)).

■ Of course, the United States Supreme Court's interpretation of the Due Process Clause establishes merely the minimum guarantees of the Federal Constitution. *Aetna Life Ins.,* 475 U.S. at 828, 106 S.Ct. 1580. "[T]his Court and other state courts are at liberty to interpret state constitutions to provide greater protection of individual rights than are mandated by the United States Constitution." *Crayton,* 846 S.W.2d at 685. While we have previously recognized that there is little difference in the language of Section 10 of the Kentucky Constitution and the Fourth Amendment to the U.S. Constitution, *id.,* this Court has at no time denied itself the right to enhance the protections afforded the citizens of this Commonwealth by the Kentucky Constitution. The need for such enhanced protection is particularly evident when the nature of the error goes to the accused's right to have a probable cause determination made by a neutral and detached judicial officer. An error of this magnitude taints the entire judicial process. The error can only be cured by suppression of any evidence obtained pursuant to the tainted search, regardless of the good faith of all the parties. *See Leon,* 468 U.S. at 926, 104 S.Ct. 3405.

We feel that the present situation of the trial commissioner in the case *sub judice* may lead her to place more emphasis on the Commonwealth Attorney's opinion regarding the presence of probable cause in a warrant application because her husband is employed by that office. Such a situation may lead her "not to hold the balance nice, clear and true between the State and the accused." *Connally,* 429 U.S. at 250, 97 S.Ct. 546.

Accordingly, we hold that the trial commissioner in this case did not exhibit that neutrality and detachment demanded of a judicial officer in charge of issuing search warrants due solely to the appearance of impropriety created by her relationship to an employee of the Commonwealth Attorney's office. Such is a violation of Canon 2 of the Code of Judicial Conduct and Section 10 of the Kentucky Constitution. The Court of Appeals' decision is affirmed. The case is remanded to the Lee Circuit Court so that Brandenburg may withdraw her guilty plea and for further proceedings.

LAMBERT, C.J.; and KELLER, J., concur. JOHNSTONE, J., concurs in result only. GRAVES, J., dissents by

separate opinion, with COOPER and WINTERSHEIMER, JJ., joining that dissent.

GRAVES, Justice, dissenting.

I respectfully dissent on the basis that the majority extends our previous decisions too far. Though we recognize that, "the appearance of impartiality is next in importance only to the fact [of impartiality]," *Wells v. Walter*, Ky., 501 S.W.2d 259 (1973), the situation in this case only appears partial at first glance. Even though the trial commissioner's husband works for the Commonwealth Attorney in the capacity of a victim advocate, he is not involved in prosecuting criminal defendants beyond counseling victims and is precluded from practicing law in any capacity. KRS 15.760. Though the defendant may believe a trial commissioner in this situation would be biased, this alone does not constitute bias, and we require that the appearance of bias be objective. *Webb v. Commonwealth*, Ky., 904 S.W.2d 226, 230 (1995), *citing Howerton v. Price*, Ky., 449 S.W.2d 746, 748 (1970); *Sommers v. Commonwealth*, Ky., 843 S.W.2d 879, 882 (1992).

The majority presumes that the trial commissioner may be partial to the requests of her husband's employer. However, since the Commonwealth Attorney does not involve victim advocates in the capture or prosecution of criminals, her husband's knowledge of these affairs would be sufficiently limited to prevent bias. Further, the majority's argument that a trial commissioner who is not a lawyer will give more credence to warrants prepared by the Commonwealth Attorney suggests that a trial commissioner must be a lawyer to be unbiased. Such contravenes Section 113 of Kentucky's Constitution, as well as KRS 24A.100, allowing non-attorneys to serve as trial commissioners in counties where an unbiased attorney cannot be found.

The Judicial Ethics opinions (JE) cited by the majority as support can be distinguished from the case at hand. A secretary's intimate knowledge of a law firm cannot compare to a victim advocate's limited access to the business of a Commonwealth Attorney, making any subtle influence negligible. JE—13, 101. JE—34 (stating that a judge can only sign warrants prepared by his daughter in her capacity as County Attorney if there is no other judge available) serves as a good example of why trial commissioners may be neutral and detached, though married to a victim advocate. The trial commissioner in this case is not only more detached than the judge in JE—34, but the Kentucky Constitution created the post specifically for counties without a judge to perform those duties. Lastly, requiring that a judge only disqualify himself from cases in which his son, as Commonwealth Attorney, actually participates, JE—8, is a perfect analogy to this case because the victim advocate had no involvement with the issuance of the search warrant. Presumably, one can infer from JE—8 that attorneys working in the Commonwealth Attorney's office could argue before the father of their employer; the victim advocate's interest in the trial commissioner's dealing with the Commonwealth Attorney would be even less.

The trial commissioner is not a judge and the victim advocate is not the Commonwealth Attorney, therefore, considering the Judicial Ethics Opinions and cases cited herein, I cannot join with the majority holding that this case involves an appearance of bias sufficient enough to remand.

COOPER, and WINTERSHEIMER, J.J., join this dissenting opinion.